UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA Government

V. CASE NO. 3:24-cr-11-KHJ-LGI

TONARRI MOORE Defendant

**TRANSCRIPT OF PLEA HEARING**

BEFORE HONORABLE KRISTI H. JOHNSON
UNITED STATES DISTRICT JUDGE

February 27, Jackson
Jackson, Mississippi

The proceedings were reported by a stenographic court reporter. The transcript was produced using computer-aided transcription.

*Margaret Wasmund, RDR, CRR, CRC*
*Court Reporter*
*755 Kersh Road*
*Brandon, Mississippi 39042*
*margaretwasmund@gmail.com*/601-329-6113

APPEARANCES:

REPRESENTING THE GOVERNMENT:

Carla J. Clark, Esquire
U.S. Attorney's Office
501 East Court Street, Suite 4.430
Jackson, MS 39201

REPRESENTING THE DEFENDANT:

Princess Abby, Esquire
Federal Public Defender's Office
200 S. Lamar, Suite 200-N
Jackson, MS 39201

ALSO PRESENT:

Tonarri Moore, Defendant

(February 27, 2024, 10:00 a.m.)

THE COURT: Ms. Clark, if you will, please call the case.

MS. CLARK: We are before the court today in United States v. Tonarri Moore, Criminal Number 3:24-cr-11-KHJ-LGI. The defendant is present in court with his counsel, the Honorable Princess Abby. I understand the defendant wishes to enter a plea of guilty to a criminal information filed in this case charging a violation of Title 18, United States Code, Section 922(g)(1). There is a plea agreement and a plea supplement executed by the parties for the court's consideration during this hearing.

THE COURT: All right. Thank you, Ms. Clark.

Ms. Abby, will you introduce yourself for the record, please.

MS. ABBY: Good morning, Your Honor. Assistant Federal Public Defender Princess Abby here on behalf of Mr. Tonarri Moore who is standing beside me.

THE COURT: Good morning, Mr. Moore.

THE DEFENDANT: Good morning, Your Honor.

THE COURT: I understand that you wish to change your plea; is that correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. If you will go ahead and raise your right hand, I'm going to have you sworn in.

(Defendant Moore sworn.)

THE COURT: You understand that you're now under oath, so all answers that you give to any questions that I ask you must be truthful and accurate.

THE DEFENDANT: Yes.

THE COURT: Do you understand if you give me an answer that is not truthful and accurate you could be subject to further prosecution for giving a false statement?

THE DEFENDANT: Yes.

THE COURT: I am sure that Ms. Abby has given you some idea of what this morning will look like, but in order for you to enter a plea of guilty, there's a lot of questions that I have to ask you first. So be patient with me. All of these questions are important. If any time I ask you something that you do not understand, will you let me know?

THE DEFENDANT: Yes.

THE COURT: If at any time I ask you something and you want to consult with your attorney before you respond to me, will you let me know?

THE DEFENDANT: Yes.

THE COURT: And I'll give you whatever time you need to do that. You just have to let me know. What is your full name?

THE DEFENDANT: Tonarri Moore.

THE COURT: Are you able to understand the English

language?

THE DEFENDANT: Yes, I am.

THE COURT: I'm about to ask you a series of questions that I ask every defendant that comes before me, and it's just to determine whether or not you are competent to enter a plea of guilty. How old are you, Mr. Moore?

THE DEFENDANT: 46.

THE COURT: And how far did you go in school?

THE DEFENDANT: Community college.

THE COURT: One more time.

THE DEFENDANT: Community college.

THE COURT: Did you graduate or some college?

THE DEFENDANT: Just some college.

THE COURT: Are you able to read and write?

THE DEFENDANT: Yes, ma'am.

THE COURT: Have you ever been treated for any type of mental illness?

THE DEFENDANT: No, ma'am.

THE COURT: Have you ever received treatment for any type of addiction to drugs or alcohol?

THE DEFENDANT: No, ma'am.

THE COURT: Are you currently under the influence of any type of drug, medication, or alcohol?

THE DEFENDANT: I took my pain medicine this morning.

THE COURT: Okay. Is that prescribed pain

medication?

THE DEFENDANT: Yes, it is.

THE COURT: Are you taking any other type of medication?

THE DEFENDANT: Blood pressure.

THE COURT: Any other prescribed medication?

THE DEFENDANT: No, ma'am.

THE COURT: Is there anything about the medication that you were on that would impair your ability to understand me?

THE DEFENDANT: No, ma'am.

THE COURT: You are before the court to plead guilty to an information. So throughout this process -- and by this process, I mean when you learned of the information and consulted with your attorney -- do you feel as if you have been able to understand any advice that Ms. Abby has given you?

THE DEFENDANT: Yes.

THE COURT: And do you know why we're here today?

THE DEFENDANT: I do.

THE COURT: Do you understand the seriousness of the proceedings today?

THE DEFENDANT: Yes, I do.

THE COURT: And just in your own words, Mr. Moore, what is your understanding of what we're here to do today in this court?

THE DEFENDANT: Plea agreement.

THE COURT: Plea agreement?

THE DEFENDANT: Yes.

THE COURT: On the date of the crimes charged against you in the information, were you mentally capable of understanding the difference between right and wrong?

THE DEFENDANT: Yes.

THE COURT: And did you know that it was wrong for you to possess ammunition despite your felony status?

THE DEFENDANT: Yes, ma'am.

THE COURT: Ms. Abby, through your representation, have you had the opportunity to meet and discuss with Mr. Moore these charges?

MS. ABBY: Yes, Your Honor.

THE COURT: And through your interactions with him, are you satisfied that he is capable of understanding the proceedings today and your advice?

MS. ABBY: Yes, Your Honor.

THE COURT: Do you have any reservations whatsoever about his competency to enter a plea of guilty?

MS. ABBY: No, Your Honor.

THE COURT: A similar question to the government, Ms. Clark. Does the government have any reservations with respect to Mr. Moore's competency to enter a plea of guilty?

MS. CLARK: No, Your Honor.

THE COURT: Mr. Moore, have you received a copy of the information which are the written charges pending against you?

THE DEFENDANT: Yes, I have.

THE COURT: Have you had an opportunity to fully discuss those charges with Ms. Abby?

THE DEFENDANT: Yes, I have.

THE COURT: Did you have an opportunity to ask her any questions that you may have had about those charges?

THE DEFENDANT: Yes, I have.

THE COURT: It's what lawyers call discovery but really it's evidence. Have you had an opportunity to discuss with Ms. Abby what evidence the government has against you with respect to this particular charge?

THE DEFENDANT: Yes, I have.

THE COURT: Do you feel like at this stage you fully understand what the government says that you've done wrong?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you satisfied with the amount of time that you have spent with your attorney?

THE DEFENDANT: Yes, ma'am.

THE COURT: And this is a similar question, but are you satisfied with the amount of time that your attorney has spent on your case?

THE DEFENDANT: Yes, ma'am.

THE COURT: Sometimes we get to the end of a case after sentencing and the defendant is not satisfied with the sentence and then I learn for the first time that the defendant was not satisfied with their counsel. But for the -- for now, at this stage of the proceeding, are you fully satisfied with the advice and counsel that Ms. Abby has given you?

THE DEFENDANT: So far, yes.

THE COURT: Okay. I understand that there have been some conversations between your attorney and the government that have resulted in a plea agreement and a plea supplement; is that correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: Is your willingness to plead guilty today a result of those discussions?

THE DEFENDANT: Yes, ma'am.

THE COURT: As for the plea agreement and plea supplement, did you have an opportunity to read through those documents and ask your attorney any questions that you may have had about the documents before you signed them?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you feel like you fully understand the terms of the plea agreement and the plea supplement?

THE DEFENDANT: Yes.

THE COURT: Ms. Abby, do you agree that you have gone through those documents with Mr. Moore?

MS. ABBY: Yes, Your Honor.

THE COURT: And are you satisfied that he fully understands the terms of the plea agreement and plea supplement?

MS. ABBY: Yes, Your Honor.

THE COURT: All right. Mr. Moore, at this time I'm going to ask the attorney for the government to cite into the record some key provisions from those documents. I want you to listen carefully because once Ms. Clark is finished I'm going to ask you whether or not you agree to those terms.

You may proceed, Ms. Clark.

MS. CLARK: Thank you, Your Honor. The plea agreement that I'm about to describe represents the only plea offer that was tendered to the defendant in this matter. The complete terms of the agreement between the United States and the defendant are contained in two documents entitled, "Plea Agreement and Plea Supplement," and both documents have been signed by the defendant and defense counsel, and I have signed them on behalf of the United States.

The documents acknowledge that the terms of this plea agreement have been read by or to the defendant, have been explained to the defendant by defense counsel, are understood by the defendant and are voluntarily agreed to and accepted by the defendant.

The documents reflect that the defendant has agreed to

plead guilty to violating Title 18, United States Code, Section 922(g)(1) and 924(a)(2) regarding possession of ammunition by a convicted felon as charged in the single-count criminal information filed on February 20th of 2024. In exchange, the United States will recommend that the defendant be sentenced as set forth in the plea supplement to be filed under seal in accordance with the local criminal rules of this court.

The agreement includes waivers described in detail in paragraph 8 of the plea agreement. The defendant expressly waives the following rights: The right to appeal the conviction and sentence imposed in this case or the manner in which the sentence is imposed either through direct appeal or through any postconviction proceeding. However, the defendant expressly reserves the right to raise ineffective assistance of counsel claims.

The defendant also waives any right to seek attorney's fees and/or costs under the Hyde Amendment. And the defendant acknowledges that the government's position in the instant prosecution is not vexatious, frivolous, or in bad faith. The defendant also waives all rights to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution under the Freedom of Information Act, and the defendant agrees that any factual issues regarding sentencing will be resolved by this

court under a preponderance of the evidence standard. And the defendant waives any right to a jury determination of these sentencing issues.

At this time, Your Honor, the United States requests the court have the defendant personally confirm that he understands and agrees with the terms of the plea agreement and the plea supplement, including the waivers as outlined by the government.

THE COURT: All right. Thank you, Ms. Clark.

Mr. Moore, were you able to hear and understand Ms. Clark?

THE DEFENDANT: Yes.

THE COURT: And do you agree with those terms?

THE DEFENDANT: Can I ask my attorney something?

THE COURT: Yes, you may. Step back from that microphone, and you may.

(Off-the-record discussion between Ms. Abby and Defendant Moore.)

THE COURT: All right. Mr. Moore, do you agree with those terms?

THE DEFENDANT: Yes, ma'am.

THE COURT: And you understand that, of course, Ms. Clark didn't read through all the documents. She just hit some of the highlights. But do you agree to all of the terms of the plea agreement and plea supplement?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do the plea agreement and plea supplement represent your entire understanding with the government?

THE DEFENDANT: Yes, ma'am.

THE COURT: Has anyone made any other or different promise or assurance to you of any kind in an effort to try to get you to plead guilty?

THE DEFENDANT: No, ma'am.

THE COURT: So aside from what's in the documents, has anyone made any promise aside from what's in those documents in an effort to try to get you to plead guilty?

THE DEFENDANT: No, but she didn't read everything. Can you hold on a second?

THE COURT: You're right.

(Off-the-record discussion between Ms. Abby and Defendant Moore.)

THE DEFENDANT: I'm just saying she didn't read everything in the documents, but I read the documents.

THE COURT: That's correct.

THE DEFENDANT: Yes.

THE COURT: So what I'm asking you is -- as I indicated in the previous question, she just hit some of the highlights.

THE DEFENDANT: Yes. That's correct.

THE COURT: But what I'm asking you is, aside from what's contained in all of the plea agreement and plea

supplement, has anyone made any different or other promise to you --

THE DEFENDANT: No, ma'am.

THE COURT: -- in an effort to try to get you to plead guilty?

THE DEFENDANT: No, ma'am.

THE COURT: Has anyone in any way attempted to force you to plead guilty?

THE DEFENDANT: No, ma'am.

THE COURT: Are you pleading guilty of your own free will because you are guilty?

THE DEFENDANT: Yes, I am.

THE COURT: Do you understand that the terms of the plea agreement and plea supplement are merely recommendations to the court, that I can reject those recommendations without permitting you to withdraw your plea of guilty and could sentence you to something that's higher than you may anticipate?

THE DEFENDANT: Yes, I do.

THE COURT: Now, Ms. Clark went through the waivers that are included in paragraph 8 of the plea agreement. I'm not going to go back through all of those waivers. But what I want to make sure, just generally speaking, you understand that if I sentence you to something that's different or that's higher than you may anticipate, that through those waivers you

have given up your right to appeal that to a higher court. Do you understand that?

THE DEFENDANT: I understand.

THE COURT: I mean, there was an --

THE DEFENDANT: It's just scary, but I understand it, yes. Yes. Put my mercy on the court and my faith in the court. I understand it, I signed it, and I understand what's going on. Yes, I do, Your Honor.

THE COURT: With respect to the waivers and with the rest of the plea agreement and supplement, have you discussed the waivers with your attorney?

THE DEFENDANT: Yes, ma'am.

THE COURT: Did you discuss the consequences of those waivers with Ms. Abby?

THE DEFENDANT: Yes, ma'am.

THE COURT: And are you knowingly and voluntarily agreeing to all of the terms of the plea agreement and plea supplement which would necessarily include those waivers?

THE DEFENDANT: Yes, ma'am.

THE COURT: Ms. Abby, do you have the plea documents?

MS. ABBY: Yes, Your Honor. May I approach?

THE COURT: One second. If you will for me, flip to the last page of the plea agreement. And Mr. Moore, if you could confirm for me that that's, in fact, your signature on the plea agreement.

THE DEFENDANT: It is.

THE COURT: And then the same on the plea supplement, Mr. Moore, if you will confirm that that's, in fact, your signature on the plea supplement.

THE DEFENDANT: Yes.

THE COURT: All right. Ms. Abby, you may approach now.

The court has received the plea agreement which contains six pages and is fully executed by counsel for both sides and Mr. Moore, and it will be filed in the record in this case.

The court has also received the plea supplement which contains nine pages. It's fully executed by counsel for both sides and Mr. Moore, and it will be filed in the record in this case under seal.

Do you understand, Mr. Moore, the offense to which you're pleading guilty is a felony offense?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that if your plea is accepted by the court today that you will be adjudged guilty of that offense?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you also understand that such adjudication may deprive you of valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm of any

kind?

THE DEFENDANT: Yes. Yes, ma'am.

THE COURT: I'm going to go through with you next the possible consequences of you entering a plea of guilty today. I need to make sure that you understand what the penalties are for this particular offense.

You were charged in a single-count information with violating Title 18, United States Code, Section 922(g)(1). Do you understand that that particular offense carries a term of incarceration of not more than ten years' imprisonment.

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that that offense carries a fine of up to $250,000?

THE DEFENDANT: Yes, ma'am.

THE COURT: You also understand that that offense carries a term of supervised release of not more than three years.

THE DEFENDANT: Yes, ma'am.

THE COURT: Now, at this stage the court is not fully informed until probation does your presentence report later. So as a precautionary matter, if you are deemed to be an armed career criminal under 18 U.S.C. Section 924(e), then your sentence would be different. In that scenario, your sentence would be not less than 15 years and up to life in prison. The fine would be not more than $250,000. The supervised release

would be not more than five years. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand with respect to that term of supervised release that I mentioned that that period of time doesn't start running until you're released from any period of incarceration?

THE DEFENDANT: Yes.

THE COURT: Do you also understand that when you're on supervised release, there's going to be certain rules that you have to follow, and that if you violate any of those rules, you could be sent back to prison for your full term of supervised release and you wouldn't get credit for any time you had already spent out.

THE DEFENDANT: Yes, ma'am.

THE COURT: Ms. Clark, I assume there's no forfeiture, but I just want to ask to be sure.

MS. CLARK: That's correct, Your Honor.

THE COURT: You also understand that you must pay a mandatory special assessment of $100 per count. And here, since it's one count, it would be $100.

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. You understand all the things I just went through with you are the possible consequences of entering your plea?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you and Ms. Abby spoken at all about the sentencing guidelines and how they might apply?

THE DEFENDANT: Yes, ma'am, we have.

THE COURT: Okay. Do you understand, although Ms. Abby may have given you some estimates, that she doesn't know and I don't know what your actual guideline range will be until probation does your presentence investigation report?

THE DEFENDANT: Yes, ma'am.

THE COURT: I just want to make sure that you understand that any sentence imposed may be different from any estimates that your attorney has given you.

THE DEFENDANT: Okay.

THE COURT: Okay. Do you also understand that as for those guidelines, they are advisory to the court, which means I have to look at them but I don't have to follow them. I can decide to sentence you to something below the guideline range or to something above the guideline range. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you also understand that the court in its discretion can decide to sentence you under the statute and could sentence you to the maximum allowable amount, which in your case is not more than ten years, but in that Armed Career Criminal context could be up to life.

THE DEFENDANT: Yes, ma'am.

THE COURT: And then at least in the federal system, do you understand that parole has been abolished, so if you are sentenced to some period of incarceration, you would not be released early on parole.

THE DEFENDANT: Okay. I'm just knowing it.

THE COURT: What's that?

THE DEFENDANT: I'm just knowing it. Yes, ma'am.

THE COURT: There's other potential scenarios like good time credit and things like that with the federal system, but with parole, parole in the federal system has been abolished.

THE DEFENDANT: Okay.

THE COURT: Now, I'm going to go through with you next a series of constitutional rights that you have and that by entering a plea of guilty you're going to be waiving or giving up those rights. So before I let you give up those rights, I just have to make sure that you understand what they are. Do you understand that you have a right to plead not guilty to any offense charged against you?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that if you plead not guilty, you have a right to a trial by jury?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand at trial you would be presumed to be innocent, and it's the government's burden to

prove your guilt beyond a reasonable doubt?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that you have the right to the assistance of counsel for your defense at trial and at every stage of the proceeding and that if necessary the court would appoint an attorney for you?

THE DEFENDANT: Yes, ma'am.

THE COURT: Now, once you get to trial, you have a number of rights there. You have the right to see and hear all the witnesses against you and have them cross-examined in your defense. You have the right to issue subpoenas that would compel individuals to come and testify on your behalf. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you also understand that at trial if you decided not to testify or put on any evidence whatsoever, that that could not be used against you?

THE DEFENDANT: Yes, ma'am.

THE COURT: And finally, do you understand that by entering a plea of guilty today, if the court accepts that plea, that you will have waived your trial and given up your right to a trial as well as the rights associated with the trial as I just described them?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. You are charged in the

information with possessing ammunition despite being a convicted felon. The next thing I'm going to through with you, Mr. Moore, is what lawyers call the essential elements of the offense. So in essence all it is -- the elements are the things that the government would have to prove if you decided to take this matter to trial. I'm going to read through these elements for you.

Title 18, United States Code, Section 922(g)(1) makes it a crime for a convicted felon to knowingly possess ammunition. For a jury to find you guilty of this crime, the jury would have to be convinced that the government has proved each of the following beyond a reasonable doubt:

First, that the defendant knowingly possessed ammunition as charged.

Second, that the defendant possessed the ammunition -- let me back up. Second, that before the defendant possessed the ammunition, the defendant had been convicted in a court of a crime punishable by imprisonment for a term in excess of one year.

Third, that the defendant knew he had been convicted in a court of a crime punishable by imprisonment for a term in excess of one year.

And fourth, that the ammunition possessed traveled in interstate or foreign commerce, that is, before the defendant possessed the ammunition it had traveled at some time from one

state to another or between any part of the United States and any other country.

The term "ammunition" means ammunition or cartridge cases, primers, bullets, or propellant powder designed for use in any firearm.

Do you understand, Mr. Moore, the government has to prove those elements I just read through beyond a reasonable doubt?

THE DEFENDANT: Yes, ma'am.

THE COURT: And do you understand what it is the government must prove as to those elements?

THE DEFENDANT: Yes, ma'am.

THE COURT: Did you discuss with Ms. Abby these elements and understand any explanation that she has provided you?

THE DEFENDANT: Yes, I did.

THE COURT: And do you fully understand the nature of the charges against you?

THE DEFENDANT: Yes, ma'am.

THE COURT: Ms. Abby, can you confirm for me that you have discussed these elements with Mr. Moore?

MS. ABBY: Yes, Your Honor.

THE COURT: And are you satisfied that he understands?

MS. ABBY: Yes, Your Honor.

THE COURT: All right. Mr. Moore, at this time I'm

going to ask the attorney for the government to state into the record the facts that the government would be prepared to show if you decided to take this matter to trial. I want you to listen carefully because once Ms. Clark is finished I'm going to ask you whether or not you agree to those facts.

MS. ABBY: Court's indulgence, Your Honor.

(Off-the-record discussion between government and defense counsel.)

MS. ABBY: Thank you, Your Honor.

MS. CLARK: May it please the court.

THE COURT: You may proceed.

MS. CLARK: Your Honor, if this case proceeded to trial, the government would prove the following facts, among others, beyond a reasonable doubt through physical evidence and testimony:

On September 14th of 2021, federal agents executed a search warrant at defendant Tonarri Moore's residence in Edwards, Mississippi. The search warrant was issued by U.S. District Judge Henry T. Wingate. The DEA was the primary agency responsible for searching the residence.

During the search, several contraband items were found. Approximately one or two ounces of cocaine was recovered inside a wall hanging suspended from a string. Marijuana was recovered in various baggies in plain sight. And an HS Produkt brand, Model XDS, nine-millimeter pistol was found in the tank

of a toilet. That pistol was loaded with nine rounds of nine-millimeter Sig Sauer brand hollow point ammunition. Agents later discovered that the nine-millimeter HS Produkt pistol was reported stolen to the Hazlehurst, Mississippi, police department on October 28th of 2017.

Nine-millimeter CCI brand ammunition was found in plain view on a kitchen countertop. This ammunition has a silver-colored casing and blue projectiles that contain small gauge shot. This type of ammunition is commonly referred to as rat shot. Eight rounds of rat shot were recovered.

Additional ammunition was found in a box on a shelf in the kitchen pantry. Some of the ammunition in the box consisted of eight rounds of nine-millimeter Sig Sauer brand hollow point ammunition, which appeared to be identical to the ammunition found in the pistol recovered from the toilet tank. Also in the boxes were 11 rounds of .17 caliber -- that's point 17 caliber -- Hornady ammunition and rifle rounds were located in two magazines, one silver and one black.

Defendant Moore made an admission that he owned hunting rifles for hunting and ammunition for hunting and thought there might be a hunting rifle in the residence, but no hunting rifle was recovered.

Defendant Moore has prior felony convictions for manslaughter, conspiracy to distribute cocaine, and possession of cocaine with intent to distribute. The manslaughter

conviction occurred in 1996. Defendant Moore received a five-year probation sentence for this conviction. The felony narcotics convictions occurred in 1999. Defendant Moore received a three-year prison sentence for these convictions and his probationary sentence was revoked on the manslaughter charge.

On February 8th of 2022, ATF Special Agent Edwin Reliford examined the ammunition seized during the execution of the search warrant at Defendant Moore's residence. Special Agent Reliford's examination yielded the following results:

The cartridge casings for the CCI nine-millimeter rat shot ammunition was manufactured by Cascade Cartridge, Inc., in the state of Idaho. The cartridge casings for the Sig Sauer nine-millimeter hollow point ammunition was manufactured by Sig Sauer in the state of Arkansas. The cartridge casings for the Hornady .17 caliber ammunition was manufactured by Hornady in the state of Nebraska. The cartridge casings for the Jagemann Technologies .380 caliber ammunition was manufactured by Jagemann Sporting Group in the state of Wisconsin.

Cartridge casings are ammunition as defined in Title 18, United States Code, Section 921(a)(17)(A). All of this ammunition was manufactured outside of the state of Mississippi, and it necessarily had to travel in interstate commerce to arrive in the state of Mississippi.

These acts all occurred within the Southern District of

Mississippi and within this court's jurisdiction.

THE COURT: All right. Thank you, Ms. Clark.

Mr. Moore, were you able to hear and understand Ms. Clark?

THE DEFENDANT: Ma'am?

THE COURT: I said were you able to hear and understand Ms. Clark?

THE DEFENDANT: Yes, ma'am.

THE COURT: And do you agree with those facts?

THE DEFENDANT: No, ma'am, I don't.

THE COURT: Do you want to consult with your attorney before you --

MS. ABBY: Your Honor, there may be like small discrepancies of the amount that's stated. But other than that, he agrees with everything that meets the elements of the charge.

THE COURT: Help me understand, though -- I need a little more information as to what he disagrees with to make sure our elements are met.

MS. ABBY: I believe there was a certain amount that was stated that I can't quote. It was a number of cocaine -- a certain amount of cocaine. And I think that's his only disagreement.

THE COURT: And make sure you consult with Ms. Abby. I don't want to have you state anything on the record that you should not. But is she correct in that you disagree with the

quantity of drugs that were found?

THE DEFENDANT: Yes, ma'am. I totally disagree with that.

THE COURT: Okay. Beyond the quantity of drugs that were found, do you disagree with anything else that Ms. Clark stated?

(Off-the-record discussion between Ms. Abby and Defendant Moore.)

THE DEFENDANT: I'm sorry.

THE COURT: Take your time. No, it's fine. I want you to consult.

(Off-the-record discussion between Ms. Abby and Defendant Moore.)

THE DEFENDANT: Okay. Yes, ma'am.

THE COURT: Is there anything else besides the quantity of drugs that you --

THE DEFENDANT: That's it.

THE COURT: -- dispute?

THE DEFENDANT: That's it. Oh, I'm sorry.

THE COURT: No, it's okay. I just want to make sure we're clear for the record. Ms. Clark just stated the recitation of facts. Besides the quantity of drugs which you disagree with, is there anything else that you disagree with?

THE DEFENDANT: That's all I can think of, yes, ma'am.

THE COURT: Is that what happened?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. How do you now plead to the charge contained in the single-count information, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: It is the finding of the court in the case of United States v. Tonarri Moore that having viewed the defendant in court and considered his demeanor and responses, the defendant is fully competent and capable of entering an informed plea, that the defendant is aware of the nature of the charges and the consequences of the plea, and that the plea of guilty to the single-count information is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. So the plea is therefore accepted by the court, and the defendant is now adjudged guilty of that offense.

Mr. Moore, the next stage in the process is probation is going to prepare a presentence report for purposes of your sentencing. As part of that preparation, they're going to meet with you one-on-one, a probation officer is. You are able to and encouraged to have your attorney present when you do meet with probation. But I ask that whatever information that you provide to probation, make sure that not only is it truthful, of course, but that it's also thorough. Those reports are very

helpful to me to figure out what's an appropriate sentence.

You will have an opportunity to see that presentence report, as will the government attorneys, before I see it and you can lodge any objections that you may have to that report, and we will take those up at the time of sentencing.

Once we get to your sentencing, you will have an opportunity to speak to me directly and let me know anything you want me to know or anything you think I need to know before I sentence you. You can have Ms. Abby speak for you or you both can.

Counsel, for purposes of sentencing, I am looking at June 5th at 1:00.

MS. ABBY: That works for the defense, Your Honor.

THE COURT: Ms. Clark?

MS. CLARK: Yes, Your Honor. That's fine.

THE COURT: And per my usual, if you get the presentence report and you need additional time to do objections, just let me know and the court will give you the time you need. I just don't want to jam up probation with any type of late-filed objections.

What's the government's position with respect to bond, Ms. Clark?

MS. CLARK: Your Honor, we understand that he has been released on bond. We have no information that he has violated the terms of that bond. And therefore, we ask the

court to allow him to remain on it.

THE COURT: And I assume, Ms. Abby, that the defense holds the same position?

MS. ABBY: Very much so, Your Honor.

THE COURT: Mr. Moore, I am going to allow you to stay out on bond. I do want to reiterate I think you appeared before Judge Isaac yesterday; is that correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: She let you out on bond?

THE DEFENDANT: Yes, ma'am.

THE COURT: Whatever bond conditions she put in place for you, those will remain in effect. Please keep in mind failure to appear for your sentencing is potentially a new charge. So June 5th is our sentencing date. Stay in contact with Ms. Abby to make sure you know if that date changes.

I know you know this given the offense you're in front of me on and that you have other felony convictions, but no firearms, no ammunition. If you get caught with a firearm or ammunition -- or at least a firearm, let me say that, right now the maximum penalty is 15 years. So please be mindful of that.

Is there anything else that I need to address from the government that I have not addressed?

MS. CLARK: Not from the government, Your Honor.

THE COURT: Ms. Abby?

MS. ABBY: No, Your Honor.

THE COURT: All right. Thank you all. This matter is adjourned.

(Proceedings concluded at 10:37 a.m.)

CERTIFICATE OF REPORTER

I, Margaret Wasmund, RDR, CRR, CRC, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Dated this 4th day of March 2024.

*Margaret Wasmund*
MARGARET WASMUND, RDR, CRR, CRC
COURT REPORTER